UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              :
WARD BUCHER, et al.,          :
                              :
        Plaintiffs,           :
                              :
    v.                        :   Civil Action No. 09-1874 (GK)
                              :
DISTRICT OF COLUMBIA, et al., :
                              :
        Defendants.           :
_____:
```

## MEMORANDUM OPINION

Plaintiffs Ward Bucher and his minor son J.B. seek to collect attorneys' fees and other costs incurred in bringing a successful administrative action under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. Defendant is the Government of the District of Columbia.[1] This matter is before the Court on Plaintiffs' Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Plaintiffs' Motion for Summary Judgment is **granted in part.**

---

[1] Nominal Defendants Michelle A. Rhee, former Chancellor of the District of Columbia Schools, and Kerri Briggs, former Acting State Superintendent of Education for the District of Columbia, were dismissed with consent of Plaintiffs on November 5, 2009.

## I. BACKGROUND

### A. Factual History[2]

Plaintiff J.B., now nine years old, is "an intellectually gifted child with a problem with work production due to problems with fine motor control and visual motor integration." H.O. Decision 6, ¶ 12. In the past, J.B. has scored in the 99th percentile for his age group in ability to reason, verbal skills, and vocabulary. Id. at 7, ¶ 17. His intellectual reasoning skills have scored at or above the 95th percentile. Id. J.B. has also shown above average ability in non-verbal skills. Id. at 8, ¶ 18.

However, J.B. suffers from a number of disabilities which have "made it difficult for [him] to sustain focused attention and effort as well as to regulate his behaviors." Id. at 8, ¶ 19. These disabilities include Attention Deficit/Hyperactivity Disorder ("ADHD"), with which J.B. was diagnosed in 2007, and an auditory processing learning disorder and sensory integration disorder, with which J.B. was diagnosed in 2008. Id. at 6, ¶ 12. J.B. has also "exhibited behavioral issues in the classroom, including . . . aggression, non-compliance, inability to accept any criticism . . . and difficulty socializing." Id. at 10, ¶ 28. These disabilities

---

[2] Unless otherwise noted, the facts set forth herein are drawn from the Parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h) and from the Hearing Officer's Decision ("H.O. Decision"), Compl. Ex. A [Dkt. No. 1-2].

would cause J.B. to "struggle in a typical school environment." Id. at 12, ¶ 35.

In 2007, when J.B. was approximately six years old, he was asked to leave his Montessori preschool because of his behavioral problems. Id. at 4, ¶ 2. J.B. was then asked to leave his next school, which was in Guatemala, due to aggression toward other students. Id.

In May 2008, J.B.'s father attempted to enroll him in his neighborhood school run by the District of Columbia Public Schools ("DCPS"). Id. at 5, ¶ 4. The school refused. Id. On May 8, 2008, J.B.'s father sent the school a letter explaining his son's disabilities and requesting evaluations and a meeting to discuss accommodating J.B.'s needs. Id. at 5, ¶ 5. Finally, and only after intervention by the DCPS Ombudsman's Office at the request of J.B.'s parents, the school scheduled a meeting for August 20, 2008. Id.

The notice J.B.'s parents received for the August 20 meeting did not indicate that "this meeting would be an eligibility meeting, or even that the neighborhood school staff planned to discuss evaluations and eligibility." Id. at 5, ¶ 8. At the meeting, the school staff informed J.B.'s parents that they would not find J.B. eligible for special education until J.B. had attended a general education classroom for ten days. Id. at 5-6,

¶ 8. The staff did not address the parents' request for evaluations. Id. at 6, ¶ 8.

Because J.B.'s parents believed that placing him "in a general education classroom for even a short time would be traumatic" and feared "another behavioral incident," they enrolled J.B. in a non-public school for the 2008-2009 school year. Id. at 6, ¶ 9. J.B.'s parents also paid for private occupational therapy, tutoring, and neurological and auditory evaluations for J.B. Id. at 6, ¶ 10.

On March 31, 2009, Plaintiffs filed a Due Process Complaint alleging that DCPS had denied J.B. a FAPE. Id. at 2. J.B.'s hearing lasted four days, during which time Plaintiffs called nine witnesses and submitted numerous exhibits. Pls.' Statement of Facts ¶¶ 8-10. On June 18, 2009, the Hearing Officer determined that,

> the testimony overwhelmingly established that [J.B.] is eligible for special education as a student with multiple disabilities. Yet, DCPS ignored Petitioner's repeated requests for an eligibility meeting. When finally forced to hold the meeting by the DCPS Ombudsman's Office, DCPS failed to provide Petitioners adequate notice that they would discuss [J.B.]'s eligibility for special education. Then, after discussing [J.B.]'s disabilities and need for specialized instruction, the team failed to make an eligibility determination or decision about the request for evaluations. Instead, the DCPS team decided to throw the Student into a general education classroom to see if he 'would sink or swim.' . . . DCPS denied [J.B.] a free, appropriate, public education in failing to find [him] eligible for special education.

H.O. Decision 16-17. The Hearing Officer ordered DCPS to reimburse Plaintiffs for the costs of J.B.'s tuition for 2008-2009 and the tutoring and evaluations undertaken at Plaintiffs' expense, and to pay for J.B. to continue to attend his non-public school for the 2009-2010 and 2010-2011 school years. Id.

After the Hearing Officer issued the decision, Plaintiffs submitted a petition for attorneys' fees and costs to DCPS, seeking $50,155.00. Pls.' Statement of Facts ¶ 30. DCPS reimbursed Plaintiffs in the amount of $26,436.00, resulting in a difference of $23,719.00 between what Plaintiffs believe they are owed for the total of attorneys' fees and costs relating to J.B.'s petition and what Defendant has paid. Pls.' Statement of Facts ¶¶ 32-33. Defendant concedes that it owes Plaintiffs $1779.47 in fees. Def.'s Opp'n Ex. A, at 1. Therefore, costs of $21,939.53 relating to J.B.'s case remain in dispute.

### B. Procedural History

On October 1, 2009, Plaintiffs filed their Complaint [Dkt. No. 1] seeking the outstanding balance from their fee petition. On November 23, 2009, Defendant filed its Answer [Dkt. No. 9]. On December 17, 2009, Plaintiffs filed a Motion for Summary Judgment [Dkt. No. 12]. On June 25, 2010, Defendant filed its Opposition [Dkt. No. 30]. On July 23, 2010, Plaintiffs filed their Reply [Dkt. No. 32].

## II. GOVERNING STANDARDS

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is, that it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

Section 1415(i)(3)(B) of the IDEA gives federal district courts the authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in an administrative proceeding. 20 U.S.C. § 1415(i)(3)(B).[3] Where the party seeking the attorneys' fees was the

---

[3] Defendants concede that Plaintiffs are the "prevailing party" for the purposes of § 1415(i)(3)(B) and as such are entitled to an award of "reasonable attorneys' fees" under the statute. See Def.'s Opp'n 3.

prevailing party, the court must assess whether the fees sought are reasonable. See Jackson v. District of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). Generally, a "reasonable" attorneys' fee is based on the reasonable number of hours expended multiplied by a reasonable hourly rate. See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1324 (D.C. Cir. 1982); Cobell v. Norton, 231 F. Supp. 2d 295, 300 (D.D.C. 2002); Blackman v. District of Columbia, 59 F. Supp. 2d 37, 42 (D.D.C. 1999) (citing to Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

The plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours spent on particular tasks are reasonable. In re North, 59 F.3d 184, 189 (D.C. Cir. 1995); Jackson, 696 F. Supp. 2d at 101; Holbrook v. District of Columbia, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). In order to show the reasonableness of the hourly rates, "the plaintiff must submit evidence on at least three fronts: 'the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" Jackson, 696 F. Supp. 2d at 101 (quoting Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). The plaintiff may satisfy the burden of demonstrating the reasonableness of hours spent "by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not

the hours claimed are justified.'" Holbrook, 305 F. Supp. 2d at 45 (quoting Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327).

**III. ANALYSIS**

Defendant makes two basic objections to the fees sought by Plaintiffs. First, Defendant claims that Plaintiffs' counsel's hourly rates are unreasonable. Specifically, Defendant contends that Plaintiffs' reliance on the "Laffey Matrix" is not justified and that Plaintiffs should be reimbursed at the lower rates set by DCPS. Def.'s Opp'n 4-10. Second, Defendant argues that specific charges are unreasonable. Id. at 10-15. These claims will be addressed in turn.

**A. Hourly Rates**

Plaintiffs seek fees for counsel Karen D. Alvarez at an hourly rate of $300 for time billed before April 24, 2009, and at an hourly rate of $350 for time billed after April 24, 2009. Pls.' Mot. for Summ. J. 1. Plaintiffs rely on the fact that these rates are below the rates specified in the Laffey Matrix, which sets out compensable billing rates for attorneys in the District of Columbia and has been adopted by the judges of this District in many cases. Id. at 3. Defendant objects on the ground that DCPS's own "Guidelines for the Payment of Attorney Fees in IDEA Matters" ("DCPS Guidelines"), which limit rates for attorneys to $300 per hour, are a more appropriate benchmark than the Laffey Matrix. Def.'s Opp'n 5-8.

The Laffey Matrix, approved long ago in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354, 371-72 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984), provides a fee schedule for attorneys based on experience. See Covington, 57 F.3d at 1105. The Laffey Matrix has been updated periodically "to reflect current billing rates in the community." District of Columbia v. Jeppsen, 686 F. Supp. 2d 37, 38 n. 1 (D.D.C. 2010).

Defendant observes that the Laffey Matrix "was intended and designed for representation in federal civil litigation, not administrative proceedings." Def.'s Opp'n 5; see Covington, 57 F.3d at 1103 (describing the Laffey Matrix as evidence of "prevailing market rates for comparably experienced attorneys handling complex federal litigation."). Defendant argues that Plaintiffs' hearing was not complex and therefore related attorneys' fees should not be determined by the Laffey Matrix. Def.'s Opp'n 5-6. Defendant proposes that the DCPS Guidelines provide a more suitable formula. Id. at 7. Defendant relies on Agapito v. District of Columbia, 525 F. Supp. 2d 150 (D.D.C. 2007) (Collyer, J.), which adopted the DCPS Guidelines in place of the Laffey Matrix in awarding fees based on IDEA litigation. Id. at 6.

This Court recently considered precisely the same argument and rejected it. Cox v. District of Columbia, __ F. Supp. 2d __, Civ. No. 09-1720, 2010 WL 5018149, at *8 (D.D.C. Dec. 9, 2010) (citing Jackson, 696 F. Supp. 2d at 102) (Urbina, J.) ("numerous judges in

this district have applied Laffey rates in the context of fee awards arising out of IDEA administrative proceedings."); Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 25-26 (D.D.C. 2004) (Huvelle, J.); Brown v. Jordan P.C.S., 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (Leon, J.); Bush ex rel. A.H. v. District of Columbia, 579 F. Supp. 2d 22, 27 (D.D.C. 2008) (Urbina, J.); Abraham v. District of Columbia, 338 F. Supp. 2d 113, 124 (D.D.C. 2004) (Collyer, J.); Nesbit v. District of Columbia, Civ. No. 01-2429, at 1 (D.D.C. Nov. 4, 2003) (Order) (Kessler, J.)). As Judge Urbina concluded in Jackson, Agapito has "no binding effect on this court, [is] contrary to the weight of precedent and declined to address the decisions listed above, with which [it is] in conflict." 696 F. Supp. 2d at 102.

Moreover, Defendant's claim that J.B.'s hearing was "uncomplicated" is untenable. See Def. Opp'n 5. J.B.'s hearing lasted twenty-seven hours across four days. H.O. Decision 3; Pls.' Statement of Facts ¶ 7. The Hearing Officer considered forty-two proposed exhibits, the testimony of nine witnesses for the Plaintiffs, including five expert witnesses, and written closing statements. H.O. Decision 3-4; Pls.' Statement of Facts ¶¶ 8-10. In addition, Plaintiffs' counsel had to prepare for the testimony of the twelve witnesses for whom Defendant provided notice of its intention to call. Pls.' Statement of Facts ¶ 11.

Agapito involved no such complex matters, "no pre-hearing interrogatories or discovery, no production of documents or depositions, no psychiatrists or psychologists testifying about learning disabilities, no briefings of intricate statutory or constitutional issues, no pre-trial briefings, no lengthy hearings, no protracted arguments, and few, if any, motions filed." 525 F. Supp. 2d at 152.

Finally, as noted in Cox, "Defendant offers no reasoned defense for its own Guidelines." 2010 WL 5018149, at *9. The affidavit of Quinne Harris-Lindsey cites no justification for imposing a $300 per hour cap on all IDEA attorneys' fees, or for rejecting the Laffey Matrix, which has been so widely accepted, and no empirical evidence of prevailing attorney rates in Washington, D.C. See Def.'s Opp'n Ex. B. Nor is there evidence that these Guidelines went through any kind of process for the issuance of administrative regulations, where public comment could be submitted and considered. See D.C. Code § 2-505 (setting out procedures for notice and comment rulemaking). In short, application of the Laffey Matrix is appropriate here.

The Laffey Matrix sets out an hourly rate of $465 for work performed in 2008-2009 by attorneys with more than twenty years of experience. Plaintiffs seek an hourly rate of only $300 for time billed before April 24, 2009, and an hourly rate of $350 for time billed after April 24, 2009, for Alvarez, who has practiced law for

-11-

over twenty-four years. See Pls.' Mot. for Summ. J. 1; Alvarez Decl. ¶ 8 [Dkt. No. 12-3]. Alvarez has represented clients in proceedings before the DCPS Student Hearing Office for thirteen years. Alvarez Decl. ¶ 9. Given this experience, $300 is a reasonable rate for Alvarez's time billed before April 24, 2009, and $350 is a reasonable rate for Alvarez's time billed after April 24, 2009, on this matter.

**B. Specific Charges**

Defendant makes five challenges to the reasonableness of specific charges. Defendant claims that (1) certain clerical and non-professional work should not be compensated at an attorney's rate, (2) charges for legal work performed far before the administrative hearing are not compensable, (3) certain of Plaintiffs' entries are too vague to merit compensation, (4) certain of Plaintiffs' entries are duplicates, and (5) Plaintiffs are not entitled to reimbursement for routine costs and overhead. See Def.'s Opp'n 10-15. Each will be considered individually.

**1. "Clerical" and "Paralegal" Activities**

Defendant objects to the attempt by Plaintiffs' counsel to charge attorney rates for certain work performed, "such as calls and letters to request records from a school." Def.'s Opp'n 11. Defendant similarly argues that certain activities should have been billed at a paralegal rate––though Defendant does not provide any rationale for the way in which it categorizes these entries. Id. at

-12-

15. Defendant relies on Bailey v. District of Columbia, 839 F. Supp. 888 (D.D.C. 1993), for the proposition that clerical fees may only be permitted where an attorney is a solo practitioner. Def.'s Opp'n 11. Defendant also argues that the activities reimbursed for in Bailey were less "elementary" than the tasks at issue here. Id.

However, the court in Bailey specifically recognized that attorneys "operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle such tasks more economically" and that "[d]enying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm." 839 F. Supp. at 891 (emphasis added); see also Jeppsen, 686 F. Supp. 2d at 39. Here, Plaintiffs' counsel does not have office staff and must perform such activities herself. Alvarez Decl. ¶ 64.

Further, Defendant fails to explain why tasks such as "Reading and responding to correspondence from the DCPS Office of General Counsel," "Obtaining evidence of J.B.'s progress at British School of Washington," and "Correspondence with an expert witness concerning his testimony" should be categorized as "administrative clerical." See Pls.' Mot. for Summ. J. 12. Certainly these activities, which DCPS deemed clerical, are not "much more elementary" than "opening computer files and drafting retainer agreements," for which Plaintiffs were compensated in Bailey.

Def.'s Opp'n 11. Similarly, Defendant provides no explanation for categorizing entries such as "Telephone call with client; discuss Branson eval and findings" and "Plan and Prepare for hearing; correspondence Ed. Consultant" as work that "should have been billed at the paralegal rate." Def.'s Opp'n Ex. A, at 12-13. For these reasons, it is appropriate and reasonable to reimburse these charges at an attorney's rate.

### 2. Charges Relating to Activities in Advance of the Hearing

Defendant next challenges certain costs on the ground that charges "more than a year prior" to the Due Process Hearing "are too remote in time to have any relationship to the administrative proceedings," which occurred on May 11-13 and June 8, 2009. Def.'s Opp'n 12. Defendant contends that "in the absence of some extraordinary explanation detailing how the actions directly related to the administrative proceeding," such charges must be deemed unreasonable. Id. at 12-13.

This Court previously rejected this argument in Cox. 2010 WL 5018149, at * 11. In Cox, this Court noted that one of the cases relied upon by Defendant directly contradicts its claim. Id. In Lax v. District of Columbia, the court found that a year in advance of a hearing "is an entirely reasonable window of time to be engaging in productive work that will result in a favorable administrative decision" based merely on a showing by the plaintiff that each

charge was tied to a particular hearing. Civ. No. 04-1940, 2006 WL 1980264, at *4 (D.D.C. July 12, 2006).

Nonetheless, the Court may "'make an independent determination whether or not the hours claimed are justified.'" Holbrook, 305 F. Supp. 2d at 45 (quoting Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327). Plaintiffs' attorney states that thirteen hours billed between April 21 and August 31, 2008, "represented time spent counseling Plaintiffs on DCPS' obligations to permit them to register J.B." and other activities related to attempting to enroll J.B. at the neighborhood DCPS school. Alvarez Decl. ¶ 28. Although plaintiffs in IDEA cases must make strategic decisions that are essential to their future success in a Due Process Hearing well before the hearing itself, the Court finds that devoting thirteen hours to these particular activities was not justified. These thirteen hours should be reduced by 25%, or 3.25 hours. Therefore, 3.25 hours billed before April 24, 2009, at an hourly rate of $300, or $975.00, should be deducted from Plaintiffs' request.

### 3. "Vague" Charges

Defendant argues that entries with descriptions such as "Review of email from ed consultant" or "Schedule witness" are too vague to determine whether they are reasonably related to the Due Process Complaint. Def.'s Opp'n 13.

To be sufficient, an invoice "need not present the exact number of minutes spent nor the precise activity to which each hour

was devoted nor the specific attainments of each attorney." Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). Plaintiffs' entries make it sufficiently clear that counsel was working on issues related to J.B.'s Due Process Complaint. Defendant's criticisms are of the "nit-picking" variety which this Circuit has warned against. See Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1337-38 (Tamm, J., concurring) ("Neither broadly based, ill-aimed attacks, nor nit-picking claims by the Government should be countenanced."). The charges Defendant has described as vague or lacking specificity are reasonable and appropriate.

### 4. "Duplicate" Entries

Defendant next challenges twelve entries as "apparently duplicated elsewhere in the invoice." Def.'s Opp'n 14. Defendant provides no explanation for why it believes these entries represent duplicated work, other than, presumably, that the language in these entries is similar to the language in other entries. Plaintiffs have satisfied their burden of demonstrating the reasonableness of hours spent "by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" Holbrook, 305 F. Supp. 2d at 45. Indeed, the entries which Defendant calls "duplicative" were clearly marked in Plaintiffs' reimbursement request with separate dates and, in some cases, distinct

-16-

descriptions. See Def.'s Opp'n Ex. A, at 11; Compl. Ex B. Therefore, the supposedly "duplicate" entries are reasonable and appropriate.

### 5. "Routine" Costs

Defendant challenges eight entries as "routine business expenses . . . not reimbursable under IDEA." Def.'s Opp'n 14. Two of these challenged entries, "Communicate ed consultant Re filing, etc." and "Review eval file," are clearly compensable for the reasons spelled out above. See supra Part III.B.1.

As for the remaining six entries, which all represent travel to and from hearings, Defendant argues that "[s]uch expenses are not allowable." Def.'s Opp'n 14. Defendant is incorrect. "In this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." Blackman v. District of Columbia, 397 F. Supp. 2d 12, 15 (D.D.C. 2005) (citing Cooper v. United States R.R. Ret. Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994)); A.C. ex rel. Clark v. District of Columbia, 674 F. Supp. 2d 149, 159 (D.D.C 2009); Laster v. District of Columbia, Civ. No. 05-1875, 2006 WL 2085394, at *4 (D.D.C. July 25, 2006).

Because travel time is compensated at half the attorney's rate, however, compensation for the six entries reflecting travel should be reduced. Blackman, 397 F. Supp. 2d at 15. Therefore, four hours billed after April 24, 2009, at an hourly rate of $350, or $1,400.00, should be deducted from Plaintiffs' request.

**IV. CONCLUSION**

Plaintiffs' Motion for Summary Judgment is **granted in part**. Plaintiffs' request for $23,719.00 in reimbursement is reduced by $2,375.00. Defendant must reimburse Plaintiffs' for attorneys' costs and fees in the amount of $21,344.00.

April 11, 2011

/s/
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**